JONES, Chief Judge, and HOWELL, WHITAKER and LITTLETON, Judges, concur.

**J. A. JONES CONST. CO., Inc. v. UNITED STATES.**

No. 47704.

United States Court of Claims.
July 11, 1949.

John P. Labofish, Washington, D. C. (John J. Courtney, Washington, D. C., on the brief), for the plaintiff.

John R. Franklin, Washington, D. C., with whom was Acting Assistant Attorney General Newell A. Clapp, for the defendant.

Before JONES, Chief Judge and HOWELL, MADDEN, WHITAKER and LITTLETON, Judges.

HOWELL, Judge.

The plaintiff entered into a cost-plus-a-fixed-fee contract executed March 2, 1944, with the defendant for the construction of the Clinton Engineer Works in Roane County, Tennessee.

Under the terms of the contract the plaintiff was required to procure all necessary permits and licenses and abide by "all applicable laws * * * of the State, Territory, or political subdivision thereof wherein the work is done * * * *."

The laws of Tennessee required plaintiff to pay to the state as well as to the county a minimum fee of $25 for the privilege of holding itself out as a contractor, and in addition a sum graduated in amount upon the aggregate contract price for contracts being performed in each county.

The plaintiff was engaged in no other work in Tennessee and paid its license fees to the state and the County of Roane in the amount of $25 each as required by Sec. 7182.33 of the Tennessee Code, Williams Tennessee Code Annotated 1934.

Under the requirements of Sec. 1248.40 of the Tennessee Code, supra, plaintiff paid the sum of $3,831.50 for the "privilege license" for itself and its subcontractors based upon the aggregate contract price of the work being performed.

The contract with the defendant provided in Article II as follows:

1. *Reimbursement for Contractor's Expenditures.*—The contractor shall be reimbursed in the manner hereinafter described for such of his actual expenditures in the performance of the work as may be approved or ratified by the Contracting Officer and as are included in the following items:

\* \* \* \* \* \*

b. All subcontracts made in accordance with the provisions of this contract.

\* \* \* \* \* \*

r. Payments from his own funds made by the contractor under the Social Security Act [42 U.S.C.A. § 301 et seq.], and any disbursements required by law, which the Contractor may be required on account of this contract to pay on or for any plant, equipment, process, organization, materials, supplies, or personnel; and, if approved in writing by the contracting officer in advance, permit and license fees and royalties on patents used, including those owned by the Contractor.

\* \* \* \* \* \*

v. Such other items not expressly excluded by other provisions of this contract as should, in the opinion of the contracting officer, be included in the cost of the work. When such an item is allowed by the contracting officer, it shall be specifically certified as being allowed under this subsection.

Pursuant to his decision that the amount was an item properly to be included in the cost of performance of the work, the defendant's contracting officer reimbursed plaintiff for the $3,831.50, but later rescinded this by letter, basing his action upon an

opinion of the Board of. Contract Appeals, which in turn was based upon an opinion of the Judge Advocate General that license taxes paid by contractors could not be regarded as an item of cost in the performance of a specific contract but as a cost of acquiring the privilege of doing business to be borne by the contractor.

The contracting officer then disallowed the items previously reimbursed as well as a claim for reimbursement for $802.50 additional payments of the same character.

Plaintiff timely appealed to the Secretary of War; the War Department Board of Contract Appeals affirmed the action of the contracting officer and denied a motion to reconsider.

Thus, the question presented is whether, under the contract, the plaintiff is entitled to reimbursement for the privilege taxes paid under the Tennessee law.

We think it is.

Whether we call these payments made by plaintiff privilege fees or taxes or expenses incurred by plaintiff in order that it might perform its contract with defendant does not seem to be material. As a matter of fact, the Tennessee statutes refer to such taxes in connection with the application for "the privilege license for engaging in the business * * *" Sec. 1248.40. The other tax, which is not involved in this suit, is plainly a license tax of an original $25 and an annual renewal of $15. Sec. 7182.33.

However, the nature of these costs was closely connected with the cost of performing the plaintiff's contract. Their amount depended upon the size of the contract involved and were proper items which would be taken into consideration as necessary costs in the preparation of a "lump-sum" bid. It is also true that the "fixed-fee" involved in this case would be reduced by these taxes in proportion to the items of cost which made up the aggregate sum upon which the tax was based.

■ We do not accept the defendant's contention that such taxes should be considered items of overhead expense and thereby excluded under Section 10 of Article II of the contract. Under the provisions of the contract, especially Article II, paragraph 1, subparagraphs ($r$) and ($v$) above set out, the contracting officer was authorized to consider these payments for approval or ratification as items to be included in the cost of the work. The contractor was required to make these disbursements by virtue of the laws of Tennessee on account of the contract involved which was the only contract plaintiff had in that state.

■ It further appears to us that these payments were required on account of the contract "on or for any plant, equipment, process, organization, materials, supplies or personnel." All of these items seem to be involved in the aggregate amount of the contract upon which the privilege license tax was based.

Article I of the contract which set out the estimated cost of the work, provided in Sec. 4a that the contractor should receive "reimbursement for expenditures as provided in Article II." Beyond this reference, we can find nothing which would detract in any way from the authority of the contracting officer to ratify or approve these payments for reimbursement.

The contracting officer made his determination that such payments were properly reimbursable under the terms of the contract and caused the allowances to be made. He was required to exercise his discretion in this and other matters under the contract in a reasonable, rational manner. We do not believe that his determination can be said to be so unreasonable or arbitrary as to constitute an abuse of discretion.

There was no misunderstanding between the parties as to the meaning or interpretation of the provisions of the contract. Both were satisfied with the arrangement until the Judge Advocate General of the United States indicated that license fees could not be considered an item of cost in the performance of a specific contract.

In deference to this ruling, the contracting officer reversed himself and not only caused the previous allowances to be deducted from future payments under the contract, but denied reimbursement for similar payments made afterwards. We can understand his respect from an administrative standpoint for the opinion of

the Judge Advocate General and his actions under the circumstances, but the contracting officer had in the exercise of his independent judgment made his decision under express authority given him by the contract itself in a reasonable exercise of his discretion. We think his original determination was in accordance with the contract and is entitled to prevail. James Stewart & Co. v. United States, 71 Ct.Cl. 126, 129, 130.

The plaintiff is therefore entitled to recover. Judgment will be entered for plaintiff in the amount of $4,634.00, without interest, which is not allowable in this kind of judgment.

It is so ordered.

MADDEN, WHITAKER, and LITTLETON, Judges; and JONES, Chief Judge, concur.