### LAWRANCE AERONAUTICAL CORPORATION
### v.
### The UNITED STATES.
### No. 48942.

United States Court of Claims.
April 5, 1955.

See also 115 F.Supp. 903, 127 Ct. Cl. 714.

Stanley Suydam, Washington, D. C., for plaintiff. Herbert Wilson Smith, New York City, and Walter M. King, Washington, D. C., were on the briefs.

Paris T. Houston, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

Plaintiff's petition was filed December 10, 1948, and amended on October 14, 1949. Paragraphs two through nine, which were based on the War Contracts Hardship Claims Act, also known as the Lucas Act, 60 Stat. 902, 41 U.S.C.A. § 106 note, were dismissed on the defendant's previous motion for summary judgment, 115 F.Supp. 903, 127 Ct.Cl. 714. Defendant now moves the court for summary judgment in its favor on the remainder of the claim.

Paragraph 10 of plaintiff's petition is a claim arising out of a contract with the Signal Corps, United States Army, designated W28–003–SC–1079 and dated October 9, 1944. Under the contract the plaintiff was to build six 4 H.P. lightweight military gasoline engines, one of which was to be delivered for experimental tests before the others were delivered, for the sum of $25,100. It is alleged and for the purposes of this motion admitted that at the defendant's request plaintiff expended $104,416.57 in

executing this contract. Plaintiff has been paid $25,100 for the contract.

Defendant terminated the contract for the convenience of the Government. Plaintiff filed claims in the amount of its expenditures under the Contract Settlement Act of 1944, 58 Stat. 649, 41 U.S.C.A. § 101 et seq. These claims came before the Appeal Board, Office of Contract Settlement, as Proceeding No. 159. The Board rendered a decision in this proceeding on April 30, 1947. The opinion of the Board, of which we take judicial notice, in part was as follows:

"Appellant did not seriously contend on this appeal that it had a valid claim under section 17(a) of the Act.

"Appellant does take the position that the contract did not provide for fair compensation for termination because it did not fully compensate appellant for its expenditures, and that section 6(g) of the Act therefore places a duty upon the Board or respondent to amend the contract to provide for such compensation. Respondent contends that the Board has no jurisdiction to decide this issue since the findings from which the appeal was taken, were based solely on a claim under section 17(a).

"The Board's jurisdiction is limited to appeals from a contracting agency's findings (or failure to make findings after written demand therefor) with respect to claims under section 17 of the Contract Settlement Act and termination claims, as defined in section 3(h). A finding under section 17(a) is not a finding on a termination claim, and the Board cannot on appeal from a section 17(a) finding consider such a claim. If the Board has jurisdiction under section 6(g) to amend a contract to provide for fair compensation—a question we do not decide—such jurisdiction can only be exercised as an incident of its power to decide a termination claim where an appeal has been properly taken. Here appellant has appealed from findings under section 17(a), and therefore is precluded in this proceeding from asserting a termination claim or, as an incident thereof, a claim under section 6(g) for an amendment of the contract to provide for fair compensation.

"The findings of the War Department denying appellant's claim under section 17(a) of the Contract Settlement Act are affirmed, without prejudice to the presentation of a termination claim. [Lawrance Aeronautical Corporation v. War Department, 1 App.Bd. OCS No. 159.]"

Termination claims are defined in section 3(h) of the Contract Settlement Act as "any claim or demand by a war contractor for fair compensation for the termination of any war contract and any other claim under a terminated war contract, which regulations prescribed under this Act authorize to be asserted and settled in connection with any termination settlement." Section 17 claims are defined by section 17(a) and (b) of the Contract Settlement Act as:

"Sec. 17(a) Where any person has arranged to furnish or furnished to a contracting agency or to a war contractor any materials, services, or facilities related to the prosecution of the war, without a formal contract, relying in good faith upon the apparent authority of an officer or agent of a contracting agency, written or oral instructions, or any other request to proceed from a contracting agency, the contracting agency shall pay such person fair compensation therefor.

"(b) Whenever any formal or technical defect or omission in any prime contract, or in any grant of authority to an officer or agent of a contracting agency who ordered any materials, services, and facilities might invalidate the contract or commitment, the contracting agency (1) shall not take advantage of such defect or omission; (2)

shall amend, confirm, or ratify such contract or commitment without consideration in order to cure such defect or omission; and (3) shall make a fair settlement of any obligation thereby created or incurred by such agency, whether expressed or implied, in fact or in law, or in the nature of an implied or quasi contract."

Plaintiff filed its petition in the Court of Claims on December 10, 1948.

Defendant urges that the petition was filed too late because not filed within 90 days of the Board's decision. Defendant relies principally on section 13(d) (2) of the Contract Settlement Act, which provides, in part:

"If the war contractor is aggrieved by the decision of the Appeal Board or panel (other than an order remanding the case to the contracting agency under subsection (c) (3) (iii) of this section), then within ninety days after such decision he may bring suit on the claim or unsettled part thereof in accordance with subsection (b) (2) of this section. * * * Upon failure of the war contractor so to sue within such period, the decision of the Appeal Board or panel shall be final and conclusive."

Defendant also contends that insofar as plaintiff's claim under paragraph 10 is a termination claim it is barred because plaintiff already has received an amount not less than the total contract price. In support of this defendant cites section 6(d) of the act which reads, in part:

"(d) Except as hereinafter provided, the methods and standards established under subsection (b) of this section for determining fair compensation for termination claims which are not settled by agreement shall be designed to compensate the war contractor fairly for the termination of the war contract, taking into account—

\*　　\*　　\*　　\*　　\*

"(3) reasonable accounting, legal, clerical, and other costs and expenses incident to termination and settlement of the terminated war contract; and

"(4) reasonable costs and expenses of removing, preserving, storing and disposing of termination inventories; and

\*　　\*　　\*　　\*　　\*

"The aggregate amount of compensation allowed in accordance with this subsection (excluding amounts allowed under paragraphs (3) and (4) above) shall not exceed the total contract price reduced by the amount of payments otherwise made or to be made under the contract."

Plaintiff argues that the period of limitation did not begin to run at the time the Appeal Board rendered its decision because the Board had no jurisdiction in general, and particularly had no jurisdiction to consider a termination claim in an appeal from an agency's findings on a claim under section 17(a). Moreover, plaintiff stresses that the Board made no findings and claims that under section 13(c) (2) of the act [1]

---

1. The relevant portions of section 13 of the Contract Settlement Act provide:

"(a) Whenever the contracting agency responsible for settling any termination claim has not settled the claim by agreement or has so settled only a part of the claim, (1) the contracting agency at any time may determine the amount due on such claim or such unsettled part, and prepare written findings indicating the basis of the determination, and deliver a copy of such findings to the war contractor, or (2) if the termination

claim has been submitted in the manner and substantially the form prescribed under this Act, the contracting agency, upon written demand by the war contractor for such findings, shall determine the amount due on the claim or unsettled part and prepare and deliver such findings to the war contractor within ninety days after the receipt by the agency of such demand. * * *

"(b) Whenever any war contractor is aggrieved by the findings of a contracting agency on his claim or part thereof or by

and our opinion in Arlington Trust Co. v. United States, 109 F.Supp. 722, 124 Ct.Cl. 309, this lack of findings prevented the 90-day period from running.

■ We think the defendant's position is correct. The decision of the Board affirmed the agency's findings on the section 17(a) claim. As to this claim the 90-day period began to run from the date of the Board's decision. The provisions of section 13(c) (2) and our holding in the Arlington Trust Co. case, supra, are not applicable to this claim. Section 13(c) (2) sets out how an appeal may be brought from the agency either to the Appeal Board or directly to the Federal courts. Section 13(d) (2) specifies how decisions of the Board may be reviewed in the Federal courts. The action here on the section 17(a) claim is one of review of the Board's action, not an appeal from the agency directly to the court, and hence is governed by section 13(d) (2) rather than by 13(c) (2). To apply the limita-

tions provisions of subsection (c) (2) in this case would render the 90-day limitations provision of subsection (d) (2) meaningless.

■■ If plaintiff bases its action on section 17(b) of the act its petition is defective for failure to allege sufficient facts. Furthermore, it has not exhausted its administrative remedies for claims under section 17(b). Daniel Hamm Drayage Co. v. Willson, 8 Cir., 178 F.2d 633.

■ The Board denied jurisdiction to consider a termination claim in Proceeding 159. Whether a termination claim about the Signal Corps contract was ever considered by the agency or the Board does not appear. But it is clear that plaintiff could have recovered nothing in such a proceeding. Section 6(d) defines how compensation in termination claims is to be made. It restricts the aggregate amount of compensation allowed (exclusive of amounts under 6(d) (4) to the total contract price reduced by

its failure to make such findings in accordance with subsection (a) of this section, he may, at his election—

"(1) appeal to the Appeal Board in accordance with subsection (d) of this section; or

"(2) bring suit against the United States for such claim or such part thereof, in the Court of Claims or in a United States district court, * * *.

"(c) Any proceeding under subsection (b) of this section shall be governed by the following conditions:

"(1) When any contracting agency provides a procedure within the agency for protest against such findings or for other appeal therefrom by the war contractor, the war contractor, before proceeding under subsection (b) of this section, (i) in his discretion may resort to such procedure within the time specified in his contract or, if no time is specified, within thirty days after the delivery to him of the findings; and (ii) shall resort to such procedure for protest or other appeal to the extent required by the Director, but failure of the contracting agency to act on any such required protest or appeal within thirty days shall operate as a refusal by the agency to modify its findings. * * *

"(2) A war contractor may initiate proceedings in accordance with subsec-

tion (b) of this section (i) within ninety days after delivery to him of the findings by the contracting agency, or (ii) in case of protests or appeal within the agency, within ninety days after the determination of such protest or appeal, or (iii) in case of failure to deliver such findings, within one year after his demand therefor. If he does not initiate such proceedings within the time specified, he shall be precluded thereafter from initiating any proceedings in accordance with subsection (b) of this section, * * *.

* * * * *

"(d) (1) The Director shall appoint an Appeal Board, * * *.

* * * * *

"(2) * * * If the war contractor is aggrieved by the decision of the Appeal Board or panel (other than an order remanding the case to the contracting agency under subsection (c) (3) (iii) of this section), then within ninety days after such decision he may bring suit on the claim or unsettled part thereof in accordance with subsection (b) (2) of this section. Such suit shall proceed as if no appeal had been taken under subsection (b) of this section. * * * Upon failure of the war contractor so to sue within such period, the decision of the Appeal Board or panel shall be final and conclusive."

the amount of payments otherwise made or to be made under the contract. Since plaintiff was paid the full contract price his termination claim must fail.

Paragraph 11 of plaintiff's petition is based on a contract plaintiff made with the Navy Department, Contract No. NOs 74702, on June 29, 1940, and which was terminated on November 2, 1945, for the convenience of the Government. Plaintiff and the Government entered into a settlement agreement pursuant to the Contract Settlement Act on January 3, 1947. Defendant contends this agreement bars the claims under paragraph 11, whereas plaintiff asserts that plaintiff released only claims against the Government *by reason of the termination of the contract.*

■ Defendant's Exhibit 1, submitted on its first motion for summary judgment, contains, on page 72, a photostatic copy of the settlement agreement between the parties. The agreement provides, in part:

"Now, Therefore, the parties hereto agree as follows:

"Article 1. The Contractor hereby unconditionally waives all claim against the Government by reason of the termination of the Contract.

"Article 2. The parties agree to, and do hereby, release each other from any and all obligations arising under the Contract or by reason of its termination or under the Act, in so far as it pertains to the Contract, and all rights and liabilities of the parties so arising shall cease forthwith and be forever released except as follows: [The exceptions have no application to plaintiff]."

This agreement clearly releases all rights and liabilities which the parties had under the contract. Furthermore, it releases termination claims under the act. ■■ Does it also govern section 17 claims which plaintiff may have had under the act? We need not answer this question since we think that plaintiff had no rights under section 17. The contract price was $40,000, the actual expenditures in accomplishing the contract were $46,988.90, and plaintiff has received $36,000 in all on this contract. The plaintiff alleges the extra costs were spent in accomplishing the work. This was work it had contracted to do for $40,000. It does not allege that the work was done without or outside a formal contract at the request of a contracting agency. Nor does it allege that it incurred these extra costs where there was a formal defect in the contract or a want of authority in the Government's agent. In these circumstances a claim cannot be made under section 17. Victoria Mines, Inc. v. United States, Ct.Cl., 126 F.Supp. 205; Rice Barton Corp. v. United States, 88 F.Supp. 271, 115 Ct.Cl. 575. In addition, plaintiff has not exhausted its administrative remedies on section 17 claims. Daniel Hamm Drayage Co. v. Willson, supra. Defendants' position is, therefore, sustained also as to paragraph 11.

Paragraph 12 of the petition is based on Contract WPB 197, dated June 14, 1944, amended September 17, 1944, which plaintiff entered into with the War Production Board. The contract was for experimental work at the estimated cost of $14,875. The plaintiff allegedly furnished work and supplies at the special request of defendant in the amount of $23,917.81, of which $14,875 were reimbursed. The plaintiff submitted a claim to the contracting agency. Ultimately an appeal was taken to the Appeal Board, Office of Contract Settlement, under the designation of Proceeding No. 138. The Board rendered a decision on February 13, 1947. The decision and opinion, which we judicially notice, were as follows:

"The finding of the Civilian Production Administration dismissing the claim is affirmed without opinion. [Lawrance Aeronautical Corporation v. Civilian Production Administration, 1 App.Bd. OCS No. 138.]"

Defendant argues that the petition in this court was not filed within 90 days after the Board's decision and that sec-

tion 13(d) (2) bars petitions not filed within 90 days of the Board's "decision." Plaintiff's rejoinder is that the "findings" not the "decision" set the period of limitation in motion, that the Board never made "findings" or delivered them to the plaintiff, and that there is no showing that any "findings" which any one may have made were ever delivered to the plaintiff.

The first two arguments of plaintiff have been examined in connection with paragraph 10 and found wanting. The time limit on the right to bring suit in this court by way of appeal from the Board, under the statute, is based solely on a "decision" by the Board, and is not conditioned on whether the Board makes findings itself or merely affirms the findings of the contracting agency. The last argument of plaintiff is insufficient for similar reasons. Assuming, *arguendo*, that no findings were ever delivered to the plaintiff, we think its cause is still barred. Plaintiff chose to appeal to the Board without delivery of findings, if that is the case. Nondelivery of findings would perhaps have allowed it to delay its appeal to the Board, though we do not venture an opinion on this subject. But when it did appeal and the Board accepted the case, the nondelivery of findings became of no further consequence to the plaintiff. Plaintiff points to no provision of the statute which uses the nondelivery of findings for a purpose other than setting limitations for appeals from the agency to the Board or to the courts directly. As we have said already, plaintiff's appeal at this point is an appeal from the Board to the court under section 13(d) (2) and is governed by its limitations provision. The nondelivery of findings consequently is of no importance in this case.

The petition does not make it clear whether plaintiff filed its claim with the agency under section 17 of the Contract Settlement Act but page 93 of defendant's Exhibit 1 indicates that it relied on that section. Section 17(c) provides that disputes under that section are to be handled in accordance with section 13, under which, as we have seen, the claim is barred. Whether plaintiff's claim included a termination claim does not appear. But a termination claim could not have succeeded and cannot succeed now for reasons stated earlier in the opinion, namely, that plaintiff has been paid the full contract price. Paragraph 12 is, therefore, insufficient.

Insofar as plaintiff's petition is based on the court's general jurisdiction in contract, it must also fail. Paragraphs 10 and 13 make no allegations of breach of contract. Any suit for breach of contract under paragraph 11 is precluded by the settlement agreement.

Defendant's motion for summary judgment is granted and the remainder of plaintiff's petition is dismissed.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.